OPINION OF THE COURT
Wachtler, J.
The question presented for our review on this appeal is whether in a criminal proceeding police officers may properly be allowed to testify to the underlying facts and circumstances surrounding appellant’s unlawful arrest notwithstanding the suppression of both physical evidence seized from appellant at the time of his arrest and testimony regarding an unlawful showup conducted immediately after the arrest. We hold that they may.
On the morning of March 22,1978 Thomas Pimentel was working alone at his cousin’s grocery store in The Bronx. At approximately 10:30 a.m. appellant entered the store, *422 bought chewing gum and left. A few minutes later appellant reentered the store, still occupied only by Mr. Pimentel, produced a knife and announced a robbery. Appellant removed the contents of the cash register, consisting of money and food stamps, and fled.
At approximately 10:50 a.m. on the same morning, Officers Scanlon and Calise who were parked nearby, observed appellant walking quickly and continually looking over his shoulder. They watched him enter a subway station, emerge from it looking up and down the street, reenter into and reemerge from the station, and finally run from the station to catch a bus. As the officers followed the bus they received a radio alarm informing them that the grocery store near where they first observed appellant had been robbed.
Appellant rode the bus for only two blocks, after which the officers observed him walk for three blocks and enter a construction site. At that point the officers approached him, identified themselves and told him to stop. Appellant put his hand in his pocket, but Officer C alise restrained him before he could remove his hand. Appellant was then arrested and searched, and the officers seized a knife, $69.08 in cash and $11 in food stamps. Appellant was taken back to the grocery store, where Mr. Pimentel identified him as the person who committed the robbery. Both Mr. Pimentel and appellant were then removed to the local precinct.
At the pretrial hearing, the court determined that appellant was arrested without probable cause and granted his motion to suppress the knife, the money and the food stamps seized at the time of arrest. In addition, and for the same reason, the hearing court also suppressed the testimony by Mr. Pimentel regarding his identification of appellant at the showup immediately following the arrest. The court ruled, however, that testimony proving that appellant was arrested could be elicited. The court also permitted Mr. Pimentel to identify appellant at trial, finding that his observation of appellant immediately before *423 and at the time of the robbery established a sufficient source independent of the illegal showup.[1]
At trial the officers testified to the facts described above, except that they did not refer to the seizure of the knife, money or food stamps or to the showup identification of appellant by Mr. Pimentel. Mr. Pimentel testified to the circumstances of the robbery and identified appellant as the perpetrator, but similarly did not discuss the postarrest showup identification. After beginning its deliberations the jury asked the court whether it was entitled to know if the knife or the money was found on the defendant at the time of arrest. The court told the jury that this information could not be disclosed.
Appellant was convicted of robbery in the first degree (Penal Law, § 160.15, subd 3) and criminal possession of a weapon in the fourth degree (Penal Law, § 265.01, subd [2]). We agree with the Appellate Division that the judgment of conviction should be affirmed.
Appellant’s primary contention on this appeal is that the officers’ testimony concerning events which occurred after they stopped appellant at the construction site was the direct product of an illegal arrest and should have been suppressed in accordance with the exclusionary doctrines espoused by the Supreme Court in Wong Sun v United States (371 US 471) and its progeny. Appellant does not challenge the admissibility of testimony regarding the officers’ observations up to the point he entered the construction site, nor could he, for it is clear that even though the police lack probable cause, they may unobtrusively observe and follow a suspect as long as the suspect’s freedom of movement is not limited by doing so (People v Howard, 50 NY2d 583, 592). Appellant argues, however, that the officers’ testimony that they drew their guns and stopped appellant, that he reached into his pocket and was immediately arrested, and that he was taken to the scene of the crime and thereafter along with Pimentel to the local precinct, should have been excluded. We do not agree that the exclusionary rule should be applied to this testimony.
*424 It may well be, as is the view of some members of our court, that the testimony of the police officers in this instance was not the product or the exploitive consequence of any search or seizure falling within the proscriptive scope of the Fourth Amendment, but rather that the testimony was of observations made prior and with respect to the arrest (later determined to have been made without probable cause). On this analysis it is said that the proscription of the Fourth Amendment, and thus the constraint of its associated exclusionary rule, were irrelevant and that the hearing court accordingly properly differentiated between testimony as to certain events which occurred (the facts of the police surveillance and the arrest of defendant) — which was admitted — and evidence obtained as a result of that arrest (the knife, the money and the food stamps seized at the time and the identification testimony of Mr. Pimentel elicited as a consequence of the arrest) — which was suppressed.
But those members of the court who believe that the testimony of Officers Scanlon and C alise falls within the broad ambit of Fourth Amendment proscription, nevertheless hold the view that the concomitant exclusionary rule should not be invoked in this instance to preclude admission of their testimony. Their position may be expressed as follows. The exclusionary rule was originated to effectuate the Fourth Amendment’s guarantee that all citizens “be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures”. The rule prohibits the use of evidence obtained in violation of an accused’s Fourth Amendment rights in a criminal proceeding against him (Mapp v Ohio, 367 US 643) and this prohibition applies to any tainted fruits, whether tangible or verbal, of illegally seized evidence (Wong Sun v United States, 371 US 471, supra).
The underlying purpose of the exclusionary rule is not to redress the injury to the accused’s privacy for that privacy once invaded, may never be restored. Rather, the rule’s primary objective is to deter future unlawful police conduct and thereby effectuate the Fourth Amendment’s proscription against unreasonable searches and seizures (Linkletter v Walker, 381 US 618; Elkins v United States, 364 US *425 206). “In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generated through its deterrent effect, rather than a personal constitutional right of the party aggrieved” (United States v Calandra, 414 US 338, 348).
The Supreme Court, however, has readily acknowledged that the exclusionary rule has never been interpreted to preclude the “use of illegally seized evidence in all proceedings or against all persons” (United States v Calandra, supra, at p 348; see, also, United States v Ceccolini, 435 US 268, 275; Stone v Powell, 428 US 465, 486). Noting that in some cases the societal costs of applying the exclusionary rule are too substantial when compared to limited benefits derived from it, both this court and the Supreme Court have held that the application of the rule must be restricted to those areas where its remedial objectives are most “efficaciously served” and not merely “tenuously demonstrable” (United States v Calandra, supra, at p 348; People v McGrath, 46 NY2d 12, 21). It is clear that the exclusionary rule has never been considered a fundamental right of constitutional dimensions requiring automatic application whenever the Fourth Amendment has been violated. Rather, it has always been incumbent upon the courts to balance the societal cost of losing reliable and competent evidence against the probable effectuation and enhancement of Fourth Amendment principles, for as our court unanimously found, the application of the exclusionary rule is dependent “upon a balancing of its probable deterrent effect against its detrimental impact upon the truth-finding process” (People v McGrath, supra, at p 21).
The members of the court who consider the officers’ testimony regarding the underlying facts of the unlawful arrest to be within the proscription of the Fourth Amendment would also conclude that the testimony was properly received in evidence. The suppression of the knife, money, food stamps and postarrest showup identification transformed an arguably strong case into a weak one in which only the in-court identification by Pimentel could link appellant to the crime. The police were thus sufficiently penalized for conducting the unlawful arrest through the dissipation of an otherwise solid case against the defendant.
*426 Analysis of the probative impact of the officers’ testimony from the jury’s point of view clearly demonstrates the limited deterrent value of any additional suppression. The mere fact that appellant was arrested is in no way indicative of guilt, and that revelation to the jury would not suggest that incriminating, evidence was seized from him or that he was identified by the victim shortly thereafter. Certainly it would only be logical for a jury to assume that a criminal defendant would not be on trial had he not been arrested.
An illegal arrest, without more, has never been envisioned as a bar to prosecution or as a defense to a valid conviction (United States v Crews, 445 US 463, 474).[2] The defendant, for instance, cannot suppress his presence at trial for the reason that his arrest was illegal. Similarly, in the view of these members of the court, the circumstances surrounding an illegal arrest should not be considered as suppressible fruit.
Whichever analysis be adopted — that the testimony of the police officers does not come within the scope of the Fourth Amendment, or that in any event the exclusionary rule should not be applied in the circumstances of this case — we conclude that the testimony of Officers Scanlon and Calise was properly received in evidence.
Contrary to the assertion of the dissenters and the contention of appellant it is far from clear that the officers’ testimony required the jury to infer that appellant had been searched and that the search produced the knife and money described by Pimentel in his testimony. Appellant claims that the testimony that he was arrested near the crime scene shortly after the robbery occurred necessarily implied that if he were the robber he had no opportunity to dispose of the money or knife, and, concomitantly, that it *427 would be unlikely that appellant would have been arrested at that point unless the police seized incriminating evidence from him.
These assertions constitute nothing more than utter speculation, for it would appear to us that the opposite inference could just as easily be drawn from the testimony: the People’s failure to introduce any damning physical evidence at trial, despite appellant’s arrest in close temporal and spacial proximity to the crime and crime scene, could have carried the implication that since appellant had no opportunity to dispose of either the weapon or the money he therefore could not possibly have been the perpetrator. Moreover, the jury’s question whether appellant had possession of the knife and money at the time of arrest is not indicative of what inference was actually drawn by the jury, for the identical question could have arisen in their minds whether or not evidence of the arrest had been presented. As noted above, it is logical enough to assume appellant was arrested from the mere fact that he was in court being criminally prosecuted.
Finally, appellant’s claim that the testimony that he was taken immediately to the grocery store and, along with Pimentel, to the precinct suggested an identification by the victim immediately after the incident is similarly too speculative to warrant serious consideration. An equally plausible inference would be that since no postarrest identification testimony was. presented no positive identification occurred, requiring further opportunity for consideration at the precinct.
Had defendant been concerned as to possible inferences which the jury might draw from the officers’ testimony his remedy was to request appropriate countermanding instructions. If, in a particular case, the available inferences were so compelling as to foreclose the possibility of their eradication by any such instructions the testimony should then have been excluded. We conclude, however, the available inferences in this instance were not of such character.
For the reasons stated, the order of the Appellate Division should be affirmed.

. This part of the court’s ruling is not challenged on this appeal.

. In Crews the court states: “Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest * * * The exclusionary principle of Wong Sun and Silverthorne Lumber Co. delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible ‘fruit’ and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.”