OPINION OF THE COURT
Carol Berkman, J.
There must be a nexus between the violation of a defendant’s constitutional rights and the seizure of evidence before he has standing to move to suppress it. The mere fact that each defendant in five cases at bar was riding in a vehicle *218 which was stopped does not alone create that nexus, even assuming that the stops were without basis and accordingly violated their personal constitutional rights. In fact, in moving to suppress, each defendant herein has carefully refrained from connecting his presence to the finding of the contraband.
Thus, this court disagrees with the conclusions of a number of decisions that the illegality of an automobile stop automatically leads to the suppression of any evidence found in that vehicle as to any one of its occupants. (See, People v Jones, 125 Misc 2d 91 [Sup Ct, NY County 1984, Sklar, J.]; People v Castro, 125 Misc 2d 15 [Sup Ct, NY County 1984, Glen, J.]; People v Bay, NYLJ, Dec. 11, 1984, p 7, col 1 [Sup Ct, NY County, Wingate, J.]; People v Riddick, indictment No. 7661/ 83 [Sup Ct, NY County 1984, Glen, J.]; People v Green, 121 Misc 2d 522 [Dist Ct, Nassau County 1983, Fertig, J.]; People v Moore, 126 Misc 2d 482 [Sup Ct, Kings County 1984, Deeley, J.]; People v Aguirre, 111 Misc 2d 586 [Sup Ct, Kings County 1981, Clemente, J.].)
THE FACTS
Defendants Johnson and McDonald were passengers in a livery cab allegedly stopped for "routine investigative” purposes. According to McDonald’s motion papers, "the officers stated a pistol and some live rounds of ammunition were found in the vehicle.” The People assert a lack of standing to challenge the stop of the cab which was, the People assert, "routine and proper.”
Defendants Lopez and Guzman were passengers in a gypsy cab allegedly also subjected to a "traffic stop” without basis. It is further asserted that the plain-clothes officers "found a package of suspected narcotics under the driver’s seat, on the floor of such vehicle, and thereupon arrested passengers, Guzman and Lopez, while taking no action against the driver of the gypsy cab.” The People’s initial consent to a hearing on the issue of the lawfulness of the initial stop was withdrawn on the record on June 20, 1985.
Defendant Ocampo was a passenger in a private automobile in which cocaine and a loaded handgun were found. She asserts the stop was without basis and argues (without further factual elaboration) that the contraband found was the fruit of her illegal stop. The People have consented to a hearing on the issue of the lawfulness of the initial stop.
*219 DISCUSSION
As stated in Castro (supra), Bay (supra) and Moore (supra), the stopping of cabs does indeed present a pattern. This is not surprising, as the stopping of taxis is the subject of patrol guidelines specifically calling for special attention to medallion and livery cabs. The guidelines call for concentration in geographical areas statistically high in crimes against cab drivers and for surveillance and stopping of specific vehicles which the officers decide merit such further attention. While the incidence of broken tail lights (and the attention paid to such minor violations by Street Crime Unit officers) has aroused widespread skepticism (e.g., People v Flanagan, 56 AD2d 658, 659), the Court of Appeals has held in an analogous context that credibility problems must be dealt with case by case. (People v Berrios, 28 NY2d 361, 368-369 [1971].)
Unless and until the appellate courts decide that the widespread stopping of cabs, particularly in minority neighborhoods, requires a relaxation of standing rules as a matter of public policy, we in the trial courts are bound to apply the strict rules of standing required since such decisions as Rakas v Illinois (439 US 128 [1978]) and United States v Salvucci (448 US 83 [1980]). (See, e.g., People v Ponder, 54 NY2d 160 [1981]; People v Henley, 53 NY2d 403 [1981].) The trial courts do not have the power to alter the standing rules even to deter what we perceive to be widespread police abuses of personal constitutional rights.
Without regard to a passenger’s expectation of privacy in the vehicle in which he is riding, he has the right to proceed on his way and cannot be seized without reasonable cause. The stopping of an automobile without reasonable suspicion "constitutes an impermissible seizure”. (People v Sobotker, 43 NY2d 559, 563 [1978]; see also, Delaware v Prouse, 440 US 648 [1979]; contra, People v Judge, 117 Misc 2d 912 [Sup Ct, NY County 1982, Hornblass, J.].) Thus, each defendant herein has adequately alleged that his constitutional rights were violated by the stop of the automobile in which he was riding. This, however, does not conclude the inquiry.
CPL 710.60 (1) requires that a person moving to suppress evidence state the grounds of the motion and set forth sworn allegations of fact supporting those grounds. The ground upon which tangible evidence may be suppressed is that it was obtained "by means of an unlawful search and seizure under circumstances precluding admissibility * * * against * * * *220 defendant”. (CPL 710.20 [1]; emphasis supplied.) Put another way, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.” (Rakas v Illinois, 439 US 128, 131, n 1, supra; emphasis supplied.) A passenger in a car or a taxi may have some expectation of privacy in that vehicle under certain circumstances. (See, Rakas v Illinois, supra, at pp 148-149.) Certainly, if a passenger put a package down on the floor or seat of the passenger compartment, he could not be said to be abandoning the property or consenting to its inspection by his fellow passengers or the police. (See, Rios v United States, 364 US 253 [1960].) But if the mere passenger does not have a possessory interest in the item seized and/or searched, none of his 4th Amendment rights are implicated by its admission into evidence.
To be sure, but for the allegedly illegal stop, the contraband would not have been discovered. That does not give the defendants standing because the Supreme Court has specifically rejected a "but for” formulation for determining whether evidence must be excluded. (Wong Sun v United States, 371 US 471, 487-488 [1963] ["not * * * all evidence is 'fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police”].) Suppression is required only if the discovery of the evidence is the "direct result of the unlawful seizure.” (People v Boodle, 47 NY2d 398, 401-402, cert denied 444 US 969 [1979].)
In all of the cases before this court, so far as the defendants’ allegations go, their presence (and their unlawful stop) was merely coincidental, having nothing to do with the presence of the contraband, which, so far as they allege, may have been in the vehicle since time immemorial. They fail to explain why they should be entitled to suppress it, other than that possession is attributed to them, a clearly insufficient ground for suppression. (People v Ponder, 54 NY2d 160, supra.)
Had the evidence been found on the person of one of the other passengers, the lack of standing would presumably be clear to all. Notwithstanding that there had been an injury to the accused’s privacy by the unlawful stop, there would be no redress in the context of the criminal prosecution. (People v Young, 55 NY2d 419, 424 [1982].)
If the defendants are innocent, their remedy is by way of acquittal after trial. If there is a connection between them *221 and the evidence, and if this connection must be admitted to demonstrate the nexus between the violation of their privacy interests and the seizure of the evidence, this is simply what the law of standing requires. None of these defendants has made this showing. Accordingly, in each instance, a hearing is denied.