OPINION OF THE COURT
Eugene L. Nardelli, J.
Defendants, Robert and Francis Catalano, have been indicted for criminal sale of a controlled substance in the third degree and other crimes. They are charged with possession of cocaine with intent to sell the same and possession of a hypodermic needle and syringe.
Defendants have moved for suppression of the physical evidence seized from the car in which they were riding. The parties, agreeing on the essential facts, submitted affidavits and memoranda of law and waived a hearing.
FACTS
The car in which defendants were stopped had been rented by their father, Frank Catalano, on September 12, 1985. The rental agreement provided that the vehicle should not be operated by anyone except the customer and, among others not relevant here, members of his immediate family who permanently reside in his household. The vehicle was to be returned by September 26, according to the rental agreement, but defendant’s father has submitted an affidavit that he had been told that only if he kept it longer than 30 days would he be notified to return it or to change the agreement. The court finds that even though Hertz may have been justified in reporting the car stolen, it had not done so by October 11.
On October 11, Frank Catalano telephoned the home of his estranged wife, where both sons lived. He asked Robert to return the car. Later that day, Robert was driving the car and Francis and another man were riding as passengers. Robert’s driving the car violated the rental agreement between Hertz and his father, since he was not a permanent resident in his father’s household. While Robert was driving it in Manhattan the car was stopped by the police. When defendants got out of the car, the police saw a bullet in plain view on the front seat and proceeded to search the car and find the contraband. They then arrested defendants.
Originally, the People took the position that the stop was justified because the car had been reported stolen. It has transpired, however, that the car, a 1985 Volvo, with license plate No. 560ZLA had not been reported stolen but that a *623 1985 Volvo with a license plate differing only by one digit, 550ZLA, had been. A mistake in transmitting that number within the police department had resulted in the arresting officers receiving a report of the theft of 560ZLA, the Volvo in which defendants were riding.
CONCLUSIONS OF LAW
standing. The People contend that "as defendants were wrongfully riding in the rental automobile, they have no standing to protest its seizure by the police”. Since a Hertz agent could have taken the car from them, it is argued, defendants had no legitimate expectation of privacy against a "momentary seizure” by the police. The People rely further on Rakas v Illinois (439 US 128, 141); Jones v United States (362 US 257, 267); People v Hunter (55 NY2d 930, 931); and People v Ocampo (129 Misc 2d 217 [Sup Ct, NY County]). The first three of those cases involve only the challenge of the search of an area, not the challenge to the seizure of a defendant’s person involved in a stop. Only the last involves illegal stops.
What is basic is " 'the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.’ ” (Terry v Ohio, 392 US 1, 9, quoting Union Pac. Ry. Co. v Bostford, 141 US 250, 251.) That right is protected by the 4th and 14th Amendments; and "stopping an automobile and detaining its occupants constitute a 'seizure’ within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.” (Delaware v Prouse, 440 US 648, 653.) That principle has been recognized, either explicitly or implicitly, in People v John BB. (56 NY2d 482 [one defendant a passenger]), People v Sobotker (43 NY2d 559), and People v Ingle (36 NY2d 413). The inevitable corollary is that both the driver and passengers in an automobile have standing to challenge the stop of such automobile and with it their persons (as distinguished from the search of the automobile) and to reach the question of whether the stop was legal. The Appellate Division for the Second Department has so held. (People v Dawson, 115 AD2d 611; People v Smith [William], 106 AD2d 525; cf., Rakas v Illinois, 439 US 128, 150-151, 160, n 5; see also, People v Jones, 125 Misc 2d 91 [Sup Ct, NY County]; People v Green, 121 Misc 2d 522 [Dist Ct, Nassau County].) The Appellate Division of the First Department has *624 described the foregoing view of standing to challenge a stop as having "received limited judicial recognition” (People v Millan, 118 AD2d 236, 243), but noted that it did not measurably advance the defendant’s position under the facts of that case. (Supra.) It did, nevertheless, go on to consider the reasonableness of the stop, thus implicitly granting standing to Millan. Since the record supported the reasonableness of the stop, however, such tacitly granted standing did Millan no good.
Against the foregoing the People’s reliance upon the fact that the car was being driven in violation of its rental terms and that a Hertz agent could have taken the car from defendants on the spot is unconvincing. Whatever might be the effect on their standing of a more serious illegality in their use of the car — the Appellate Division for the Second Department has recognized standing to challenge the stop and its fruits even on the part of a thief driving a stolen car (see, People v Gittens, 110 AD2d 908; see also, People v Baez, 131 Misc 2d 689 [Crim Ct, Bronx County]) — it is clear that in the instant circumstances defendants’ position was no worse than that of someone who had overstayed his lease or failed to pay his rent and thus was subject to eviction by the landlord. Such a tenant has been held to have been legitimately on the premises when that was the criterion for standing. (United States v Paroutian, 299 F2d 486 [2d Cir].) It seems clear that he would also have a "legitimate expectation of privacy” against government intrusion, the current criterion.
Finally, the People rely on Ocampo (supra) which denied standing to five defendants in three cases, even assuming that the stops therein violated the constitutional rights of the defendants, because the discovery of the evidence sought to be suppressed was not the direct result of the illegal seizure. In the instant case, however, discovery of the bullet and the consequent search of the rental car were the direct result of the stop; defendants took no active role in revealing the seized evidence (see, People v Boodle, 47 NY2d 398, 402); there was no response to the police action, no calculated act by defendants that brought the evidence to the attention of the police. (Supra, at 404.) Moreover, once it is established that a defendant’s rights — as distinguished from the rights of another— have indeed been violated, questions of whether the discovery of the evidence was the direct result of such violation seem better treated as substantive issues akin to probable cause or reasonable suspicion and better examined without reliance on the shibboleth of standing. That is how the matter was han *625 died in People v Boodle (supra) on which the decision in Ocampo is based. If a suppression question is decided against a defendant on the issues, the adverse holding means that his rights were not unreasonably violated; yet such defendant is not thereby retroactively deprived of his standing to have had the issue reconsidered.
the reasonableness of the stop. Citing two warrant cases, defendants contend that the police error in transmitting the license plate number of the wanted car compels suppression. One memorandum concludes: "When police violate fourth amendment rights, they do so at their peril and if the information which they act upon is erroneous * * * the exclusionary rule must be invoked”. But leaps of logic between the warrants clause and the "unreasonable searches and seizures” clause of the 4th Amendment are also made at one’s peril. People v Jennings (54 NY2d 518) suppressed evidence obtained as the result of an arrest made in reliance upon a warrant which had been executed nine months earlier and vacated four months earlier. The validity of the vehicle stop which preceded it was not even challenged. (Supra, at 522.) Jennings challenged only his arrest on the warrant and sought the suppression of the fruits of the search incident to that arrest. The analogue here would be if defendants accepted the validity of the stop and challenged the search based on seeing the bullet and the arrest based on the fruits of that search. In People v Bigelow (66 NY2d 417), defendant had been arrested without a warrant and, pursuant to a warrant issued 30 minutes thereafter, his person and automobile had been searched. The warrant, however, was defective for failure to demonstrate the informant’s basis of knowledge. The Court of Appeals affirmed the Fourth Department’s finding of no probable cause for the arrest without the warrant and no probable cause for the search pursuant to the defective warrant. Again, there was no challenge to the stop. Understandably, the court in Jennings and Bigelow refused to apply any good-faith exception to the exclusionary rule, even though, in the interval between them the Supreme Court of the United States had accepted such a rule in United States v Leon (468 US 897).*
*626 A statement of the issue here illustrates the lack of relevance of Jennings and Bigelow (supra), in which the justification for arrests and seizures did not exist and the good faith of the arresting officers could not serve to bring it into being. Those cases started with the lack of probable cause as a datum; here the analogue to probable cause, reasonable suspicion for a stop, is what is in issue. Justice White’s dissent in Rakas v Illinois (supra, at 160, n 5) noted that the petitioners there had not challenged the validity of the stop "perhaps because the justification necessary for such a stop is less than that needed for a search.” The reason why Jennings did not contest his stop is clear: he had been violating the traffic laws. Bigelow was stopped and arrested in one action by the police; it was, of course, easier to challenge the arrest. Defendants here, with a bullet in view on the seat, were unable to challenge the search or the resulting arrest; instead, they challenge the stop itself and seek to do so under the stricter standards applicable to searches and arrests. The question presented here is: Was there at least a reasonable suspicion that the automobile’s occupants had been, were then, or were about to be engaged in conduct in violation of law? (People v Sobotker, 43 NY2d 559, 563, supra.) If there was no such reasonable suspicion, the stopping of such automobile by the police would constitute an impermissible seizure. (Supra.) A question not presented here is whether the police initially had sufficient information to justify a search of the car (the sight of the bullet in open view did that) or the arrest of defendants (the consequent finding of the contraband did that). (People v Landy, 59 NY2d 369.) Absent the bullet, the defendants might have satisfactorily explained their possession of the car; the invasion up until then had been very slight.
It is patent that the officers affecting the stop did have at least a reasonable suspicion that defendants’ rented 1985 Volvo, license plate 560ZLA, was a stolen car and that its *627 occupants had been and were engaged in conduct in violation of law. They had received a police radio message that the car had been stolen and were entitled to assume the reliability of that message. (People v Lypka, 36 NY2d 210, 213.) But where the action of the receiver is challenged on a motion to suppress, the facts must show that the sender too possessed the requisite knowledge to justify the police conduct. (Supra, at 212; People v Landy, supra, at 375.) Would then the information that a 1985 Volvo bearing license plate 550ZLA had been stolen give an officer receiving such report a reasonable suspicion that a 1985 Volvo bearing plate No. 560ZLA is a stolen car? Clearly it would not give him probable cause to arrest the occupants of the car he saw or to search it. But just as clearly it would justify his stopping the car to inquire. Many descriptions that are received by the police are incorrect but close enough to justify inquiry. In People v Brnja (50 NY2d 366, 370, 371), the victim described the robber to the police as wearing a long leather-type jacket with a belt and baggy pants of navy blue; when the police arrested the defendant, however, the jacket and "possibly the pants” were not as described. Nevertheless, the police were held to have had probable cause to arrest defendant. Where police received a radio report of a robbery by two short black men in a green Pontiac with black trim and minutes later stopped two short black men in a gray and black Buick, the trial court and the Fourth Appellate Division found the stop supported by reasonable suspicion that the defendants had committed the robbery. Since there was support for the undisturbed finding in the record, the Court of Appeals held the matter beyond its scope of review. (People v Hicks, 68 NY2d 234, 238.) This court has not found any New York State case in which the variation was in the license number. But in United States ex rel. Mungo v LaVallee (522 F2d 211, 214), the Second Circuit noted that "[t]he radio bulletin was certainly sufficient to move Officer Obarowski to halt the vehicle in that it carried substantially the same registration number and corresponded to the description given in the police broadcast.” (Emphasis supplied.) The District Court decision, however, indicates that the license plate number of the car stopped was exactly the same and not merely substantially the same as the number reported. (United States ex rel. Mungo v LaVallee, 372 F Supp 742, 743 [US Dist Ct, EDNY].) The Circuit Court further observed (at 214) that, although the bulletin there did not establish probable cause for an arrest and search "a police radio bulletin may justify *628 immediate investigation”. Here, it would have been no more than good police work to inquire even if the number had been transmitted correctly and the officers had been given the 550ZLA number that was actually stolen. It does not help defendant that the wrong car was stopped and that only fortuitously did the police stumble onto a different crime. The existence of probable cause and reasonable suspicion are not determined by the results of the stop. Just as an improper stop "may not be justified by its avails alone” (People v Sobotker, supra, at 565), a legal stop cannot be rendered illegal because it proves mistaken and reveals only a different crime from the one that justified it.
No facts have been stipulated as to who received the stolen car report in the department or who made it. Nevertheless, since the parties have agreed to a decision on the motion papers, affidavits and memoranda of law, since defendants have raised no questions with respect thereto, and since the description originally given to the police, if otherwise properly given, clearly would have justified any officer in stopping defendants’ car despite the one-digit difference in license plate numbers, the court finds that the People have carried the burden of going forward to show the legality of the police conduct and that the defendants have not carried their burden of proof of the illegality of the seizure of the contraband.
Defendants’ motions to suppress physical evidence are in all respects denied.

 In United States v Leon (468 US 897), the only question presented to the court on certiorari was whether a good-faith exception to the exclusionary rule should be recognized. The warrant there had been found defective because the affidavit was insufficient to establish probable cause. The court held that the good-faith exception should be recognized where, as in the case before it, the police officer’s reliance on the magistrate’s probable cause *626 determination was objectively reasonable, the magistrate issuing the warrant had not been deliberately or recklessly misled, such magistrate had not abandoned his neutral and judicial role, and the affidavit had not been so lacking in indicia of probable cause as to render belief in the existence thereof unreasonable. The court noted that it was within its power to consider whether probable cause did indeed exist; but, saying that the question had not been briefed or argued to it, it chose not to. The inference is not completely unjustified — from that choice, from the court’s discussing it at all, and from the general tenor of the opinion — that the court might have found that there had indeed been probable cause, if it had chosen to proceed on that narrower front.