People v Lloyd (2019 NY Slip Op 05855)





People v Lloyd


2019 NY Slip Op 05855


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


252 KA 14-01254

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DONNELL LLOYD, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (KRISTIN M. PREVE OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR RESPONDENT. 


 Appeal, by permission of a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department, from an order of the Supreme Court, Erie County (M. William Boller, A.J.), entered June 10, 2014. The order denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting defendant of murder in the second degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed.
Memorandum: Defendant appeals by permission of this Court pursuant to CPL 460.15 from an order denying his motion pursuant to CPL article 440 seeking to vacate the judgment convicting him following a jury trial of murder in the second degree (Penal Law
§ 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]). The proof at trial included the testimony of defendant's neighbor who saw defendant shoot the victim twice at close range, testimony that another witness heard the shots and that the victim had implicated defendant as the shooter, and ballistics evidence linking the bullets that killed the victim with ammunition that was seized from defendant's residence as part of a parole search (People v Lloyd, 99 AD3d 1230, 1230-1231 [4th Dept 2012], lv denied 20 NY3d 1101 [2013]). Defendant moved to vacate the judgment of conviction on the ground that the evidence seized from his residence should have been suppressed because the term of postrelease supervision (PRS) that he was serving at the time of the parole search had been improperly imposed administratively by the state entity now known as the Department of Corrections and Community Supervision (DOCCS) after the sentencing judge on defendant's prior conviction failed to pronounce the PRS component of the sentence (see CPL 440.10 [1] [d]; see generally Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358, 362-363 [2008]; People v Sparber, 10 NY3d 457, 469-470 [2008]). Defendant also sought vacatur on the ground that trial counsel was ineffective for failing to seek suppression on the abovementioned basis (see CPL 440.10 [1] [h]). Supreme Court denied the motion without a hearing upon concluding, in pertinent part, that application of the exclusionary rule was not justified in this case. We affirm.
It is well established that "[e]vidence that is obtained through illegal police action is not automatically subject to the exclusionary rule" (People v Bradford, 15 NY3d 329, 333 [2010]; see e.g. People v Jones, 2 NY3d 235, 241-242 [2004]; People v Young, 55 NY2d 419, 425 [1982], cert denied 459 US 848 [1982]). Indeed, the exclusionary rule—"a judicially created tool for the effectuation of constitutionally guaranteed rights . . . [f]ormulated as a pragmatic response to law enforcement procedures violative of individual liberties[—] . . . has never enjoyed the stature of an end in itself, but, rather, has served solely as a means to an end: a remedial device operating essentially upon a principle of deterrence" (People v McGrath, 46 NY2d 12, 20-21 [1978], cert denied 440 US 972 [1979]; see Jones, 2 NY3d at 241; Young, 55 NY2d at 425). The Court of Appeals has recognized that the deterrent purpose of the exclusionary rule is broader as a matter of state constitutional law than it is as a matter of federal [*2]constitutional law because, while "[t]he exclusionary rule was originally created to deter police unlawfulness by removing the incentive' to disregard the law, [it] also serves to insure that the State itself, and not just its police officers, respect the constitutional rights of the accused' " (Jones, 2 NY3d at 241, quoting People v Payton, 51 NY2d 169, 175 [1980]; see generally People v P.J. Video, 68 NY2d 296, 303-305 [1986], cert denied 479 US 1091 [1987]). Nonetheless, "the application of the rule must be restricted to those areas where its remedial objectives are most efficaciously served' and not merely tenuously demonstrable' " (Young, 55 NY2d at 425). "[I]t has always been incumbent upon the courts to balance the societal cost of losing reliable and competent evidence against the probable effectuation and enhancement of Fourth Amendment principles" and, consequently, "the application of the exclusionary rule is dependent upon a balancing of its probable deterrent effect against its detrimental impact upon the truth-finding process' " (id., quoting McGrath, 46 NY2d at 21; see Jones, 2 NY3d at 241).
Here, although we agree with defendant that his constitutional rights were violated by the warrantless search of his residence when he was not validly subject to PRS (see US Const Fourth Amend; NY Const, art I, § 12), we nonetheless conclude that suppression of the seized evidence is not warranted because, even under the broader protection afforded as a matter of state constitutional law, the exclusionary rule does not apply under the circumstances of this case. The errors leading to the eventual constitutional violation were made by the sentencing judge, who initially failed to pronounce the PRS component of the sentence on defendant's prior conviction, and by the agency that administratively added and retained the PRS period against him, not by the parole officer who reasonably initiated and conducted, with the assistance of police officers, the search of defendant's residence that led to the discovery of ammunition linking defendant to the shooting (Lloyd, 99 AD3d at 1230-1231). Thus, the improper conduct sought to be deterred by application of the exclusionary rule in this case is the unauthorized administrative imposition of PRS by a state entity rather than a sentencing judge. In that regard, defendant contends that the state criminal justice system disregarded the Second Circuit's decision in Earley v Murray (451 F3d 71 [2d Cir 2006]), which held that the administrative imposition of PRS is unconstitutional (see id. at 74-76), and he contends that application of the exclusionary rule here is necessary to deter similar "misconduct" in the future. We reject that contention.
First, when the parole search took place, in 2007, the issue whether it is proper for the state to administratively impose PRS had not yet been settled (see Garner, 10 NY3d at 362-363; Sparber, 10 NY3d at 469-470; Moulton v State of New York, 114 AD3d 115, 117-118 [3d Dept 2013]; Nazario v State of New York, 75 AD3d 715, 717 [3d Dept 2010], lv denied 15 NY3d 712 [2010]; see also Donald v State of New York, 17 NY3d 389, 395-396 [2011]; Collins v State of New York, 69 AD3d 46, 51-52 [4th Dept 2009]). Second, and more importantly, it is now settled as a matter of state statutory law that only a court may lawfully pronounce a term of PRS as a component of a sentence (see Garner, 10 NY3d at 362-363; Sparber, 10 NY3d at 469-470; cf. Earley, 451 F3d at 74-76; see also CPL 380.20, 380.40 [1]; Penal Law § 70.45 [1]) and, consequently, all the relevant government actors are now well aware of the law. Under the circumstances, the deterrent effect of applying the exclusionary rule is marginal or nonexistent inasmuch as there is little or no danger that DOCCS or other non-court entities will hereafter sua sponte impose an unpronounced term of PRS on an inmate that might facilitate a subsequent warrantless search of the inmate after being released to the purported term of PRS. In other words, the purpose of the exclusionary rule would not be frustrated in this case because allowing the People to use the seized evidence would not place "a premium . . . on the illegal police action" or create "a positive incentive . . . to others to engage in similar lawless acts in the future" (People v Bigelow, 66 NY2d 417, 427 [1985]). After all, "[t]he underlying purpose of the exclusionary rule is not to redress the injury to the accused's privacy for that privacy once invaded, may never be restored[; r]ather, the rule's primary objective is to deter future unlawful police conduct" (Young, 55 NY2d at 424), and its broader objective is "to insure that the State itself . . . respect[s] the constitutional rights of the accused" (Payton, 51 NY2d at 175), "thereby effectuat[ing] the Fourth Amendment's proscription against unreasonable searches and seizures" (Young, 55 NY2d at 424). We conclude that the marginal deterrent effect, if any, that application of the exclusionary rule may have in this case by discouraging future administrative errors in imposing PRS that subsequently result in constitutional violations is insufficient to justify its use when balanced against the "heavy price [extracted] by encroaching upon the public interest in prosecuting persons accused of criminal activity and having their guilt or innocence determined on the basis of all the evidence which exposes the truth" (People v Arnau, 58 NY2d 27, 32 [1982], cert denied 468 US 1217 [1984]).
We further note that our affirmance of the order on the abovementioned ground does not violate CPL 470.15 (1). Although we agree with defendant that the court's reference to the good faith of the police officers in conducting its analysis was misplaced inasmuch as the Court of Appeals has declined to adopt the good-faith exception to the exclusionary rule (see Bigelow, 66 NY2d at 426-427; see also P.J. Video, 68 NY2d at 305), the court also concluded more broadly that the deterrent effect of the exclusionary rule did not justify its application in this case. Our determination affirming the order on the ground that the exclusionary rule does not apply here even in light of the conception of deterrence as a matter of state constitutional law, and without reliance on any good faith of the police officers, does not constitute "the type of appellate overreaching prohibited by CPL 470.15 (1)" because such affirmance is not "on grounds explicitly different from those of the trial court, or on grounds that were clearly resolved in a defendant's favor" (People v Nicholson, 26 NY3d 813, 826 [2016]; see People v Garrett, 23 NY3d 878, 885 n 2 [2014], rearg denied 25 NY3d 1215 [2015]).
Finally, we conclude that the court properly rejected defendant's contention that he was denied effective assistance of counsel inasmuch as trial counsel could have legitimately concluded that seeking suppression on the abovementioned ground would have " little or no chance of success' " (People v Caban, 5 NY3d 143, 152 [2005]).
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court