OPINION OF THE COURT
Meyer, J.
The discretion granted a Trial Judge by the authorization of “other appropriate action” contained in CPL 240.70 (subd 1) includes vacatur of a suppression order entered by a hearing Judge of co-ordinate jurisdiction, the suppression order having been predicated not upon any Fourth Amendment violation, but upon the People’s denial of possession of any suppressible evidence or testimony. There was, moreover, sufficient evidence independent of that of the accomplices to meet the corroboration requirement of CPL 60.22 (subd 1) and the Trial Judge’s charge adequately apprised the jury of the need for independent evidence. The order of the Appellate Division should, therefore, be affirmed.
Defendant was indicted, along with Samuel Genova, Edward Strahm, Sergio Fernandez, Jesus Guerrero and Richard Napolitano for a sale of cocaine that occurred on January 17, 1980. The charges against Fernandez and Guerrero were dismissed upon their motions to inspect the Grand Jury minutes. Napolitano, Genova and Strahm pleaded guilty to lesser charges. Genova and Strahm testified at defendant’s trial.
On the evidence the jury could have found that Genova met Robert Anderson, an undercover police officer, in December, 1979, and over the next several weeks sold him small quantities of marihuana and cocaine. When Anderson told Genova he wanted to purchase a larger quantity, Genova called Strahm, who was the roommate of Genova’s nephew Napolitano, and Strahm agreed to sell Anderson three ounces of cocaine for $7,500 and divide his profit with *124 Genova. Prior to January 17, Genova had never met defendant and did not know who Strahm’s supplier was.
On January 17, Strahm, Genova, Napolitano and Anderson met in a parking lot in Carle Place and drove to a doughnut shop. There Strahm, having agreed to obtain a “taste” (sample) of cocaine for Anderson, placed a telephone call. Strahm and Napolitano then drove to a bar in Garden City. There James Wohl, a detective who had the bar under surveillance, observed the defendant drive up. Defendant remained in his car and shook hands with Strahm. Wohl followed defendant’s car to defendant’s home in Garden City.
Strahm and Napolitano returned to the doughnut shop and Strahm handed Anderson a vial containing cocaine. At this point Anderson got out of the car, supposedly to get the $7,500 payment from the trunk of his car, and Strahm, Napolitano and Genova were arrested by a surveillance team.
After the arrest Strahm agreed to co-operate with the police. He placed a telephone call to someone whom he addressed as “Ronnie” and arranged to conclude the transaction at the house where “Ronnie” was. The telephone call was tape recorded. Strahm and Anderson drove to defendant’s house and Strahm went in. Strahm emerged from the house and handed three plastic bags containing cocaine to Anderson. Anderson pretended to give him money and Strahm returned to the house. Defendant opened the door for Strahm.
Anderson rushed to the door, identified himself as a police officer and demanded that it be opened. When no one responded, he broke through the locked door and entered. Other officers broke through the rear door. Strahm and defendant were arrested in the living room, Fernandez and Guerrero in the basement. In the basement Anderson saw a triple beam scale, a razor blade, a metal pot and a strainer. There was water on the floor, in the pot and on the trousers of Fernandez and Guerrero. Also in the house, but not arrested, were defendant’s mother, brother and sister and a child who was not seen but whose cries were heard by one of the arresting officers.
*125 Genova testified to the background facts concerning the introduction of Anderson to Strahm and to the events of January 17 up to the point of arrest. Strahm testified to the details of the transaction, that defendant supplied him with the cocaine to be sold to Anderson, that the other party to the tape recorded conversation with “Ronnie” was defendant and that a large quantity of white powder was on the pingpong table in defendant’s basement just prior to the raid.
On March 12, 1980, defendant demanded discovery pursuant to GPL 240.20 (subd 1, par [e]) of which covers property taken from defendant, and two days later moved for suppression of evidence seized in violation of the Fourth Amendment or of statute. The People’s affirmation in opposition stated affirmatively that “no evidence other than the defendant’s person was seized in defendant’s house.” On September 16, 1980, the hearing Judge in reliance on that statement denied the suppression motion as moot and precluded the People from offering at trial any evidence seized in defendant’s house or from his person.
Payton v New York (445 US 573), decided the preceding April, prompted defense counsel to move on November 6, 1980 for renewal of the suppression motion. The People’s affirmation in opposition reiterated that no physical or tangible evidence had been seized from defendant’s house or person, but the matter proceeded to hearing because defendant sought to suppress also “anything that the officer[s] observed or heard upon their illegal entry into the premises.” The motion was denied, the hearing Judge holding that Payton was not retroactive but that, even if it were, (1) Officer Anderson had probable cause to enter defendant’s house and arrest him because Strahm was a reliable informant and his production of the cocaine proved his information authentic, and (2) there was a need to act quickly because the seller in the house was expecting his money and the lives of others in the house would be endangered if it was not produced.[1]
*126 At commencement of the trial on January 12, 1981, however, the trial assistant advised the Trial Judge that the People’s prior affirmations were in error, that in fact certain items including bowls, mixing utensils and a scale had been seized from defendant’s basement, and moved to vacate the preclusion order and reopen the suppression hearing. Defendant’s attorney opposed on the grounds that the hearing Judge’s order was the law of the case, that probable cause was absent and that the People’s delay in disclosure should preclude admission of the evidence. The Trial Judge held himself bound by the prior determination of the hearing Judge that there was probable cause but not by the preclusion order. He ruled, therefore, that the People could introduce any physical evidence that had been found in the house. During trial, however, he modified that ruling to exclude the physical evidence but ruled that Strahm and Anderson could testify to the items observed in defendant’s house.
At the conclusion of the People’s case and again at the end of the entire case, defendant’s attorney moved for an order of dismissal on the ground that there was insufficient corroboration of the accomplice testimony. He also excepted to the charge as related to corroboration and requested an instruction the essence of which was that “Corroborative evidence may not depend for its weight and probative value upon the accomplice testimony.” The request was denied on the ground that the charge as given adequately stated the law.
On appeal to us, defendant argues that (1) the Trial Judge’s ruling permitting testimony concerning objects observed, the objects themselves having been suppressed, is an impermissible extension of People v Young (55 NY2d 419, cert den 459 US _, 103 S Ct 107), (2) the evidence corroborating the accomplice testimony was insufficient as a matter of law essentially because the tape recorded voice could not be identified as that of defendant without Strahm’s testimony, and (3) it was error to deny the requested addition to the corroboration charge. We disagree.
Were the entry of Strahm and Anderson into defendant’s house illegal, testimony from them concerning physical *127 evidence observed or seized (People v Evans, 43 NY2d 160; People v Laverne, 14 NY2d 304, 310; People v O’Neill, 11 NY2d 148, 152), or incriminating actions observed and not attenuated (People v Abruzzi, 42 NY2d 813, affg on opn below 52 AD2d 499, cert den 434 US 921; see People v Young, 55 NY2d 419, cert den 459 US _, 103 S Ct 107, supra,[2] People v Boodle, 47 NY2d 398, cert den 444 US 969), would be inadmissible. Here, however, Strahm was invited into the house and the hearing Judge has found Anderson’s entry not to have been in violation of the Fourth Amendment. His findings of probable cause and exigency, being based upon facts that may reasonably be found and inferences that may reasonably be drawn from the record, will not be disturbed by us (People v Stone, 57 NY2d 762; People v Harrison, 57 NY2d 470; People v Mealer, 57 NY2d 214).
The basis of the preclusion order was, therefore, not any Fourth Amendment violation, but the People’s affirmation that they possessed no suppressible evidence or testimony. Having failed to comply with CPL 240.20 in response to the original motion, the People were under a continuing duty to disclose material subject to discovery (CPL 240.60), and the Trial Judge was authorized by CPL 240.70 (subd 1) upon such belated disclosure to “order * * * discovery * * * grant a continuance, issue a protective order, prohibit the introduction of certain evidence or the calling of certain witnesses or take any other appropriate action.” Although the subdivision does not explicitly provide for modification by a Trial Judge of the prior order of a hearing Judge under circumstances such as here occurred, the necessary implication of section 240.70 is that, when additional disclosure is made pursuant to section 240.60, “other appropriate action” includes modification of an earlier preclusion order, even though made by another Judge of co-ordinate jurisdiction. Thus, the Trial Judge’s original ruling permitting introduction of the physical evidence was proper and need not have been modified to preclude introduction of the physical evidence but permit testimony concerning its observation. That being so, defendant was not harmed by and cannot complain of the ruling ultimately made.
*128 With respect to the sufficiency of the corroborating evidence, it is, of course, true that the fact that Strahm had turned police informant before he placed the call to defendant does not eliminate the need for corroboration (People v Cona, 49 NY2d 26, 35) and that if the identification of defendant’s voice on the tape turned on Strahm’s testimony alone there would not be independent corroborative evidence. The People argue, however, that defendant’s identity as the second voice was established, independent of Strahm, because Anderson instructed Strahm to call “his man,” the tape established that the deal was to be consummated at the second party’s house at 11:30, the deal was consummated at approximately 11:30 at defendant’s house, and defendant was there.
CPL 60.22 (subd 1) provides that: “A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.” The purpose of that provision is, as we noted in People v Hudson (51 NY2d 233, 238-239; see, also, People v Daniels, 37 NY2d 624, 629-630), “to protect the defendant against the risk of a motivated fabrication, to insist on proof other than that alone which originates from a possibly unreliable or self-interested accomplice.” That does not, however, require independent proof of the commission of crime, for as we stated in People v Glasper (52 NY2d 970, 971): “Although corroborative evidence must be truly independent, and may not draw its probative value from the accomplice testimony (People v Hudson, 51 NY2d 233), it need not itself prove commission of the crime. Rather, it is sufficient if the corroborative evidence tends to connect the defendant to the crime so as to reasonably satisfy the jury that the accomplice is telling the truth (e.g., People v Cunningham, 48 NY2d 938, 940).”
Here, by combining the tape with other corroborative evidence, the People met their burden of connecting defendant to the crime. Independent evidence corroborated that Strahm was dealing with a second person as his source for cocaine; that cocaine was actually delivered to Anderson; that defendant played an active role at two crucial points in the drama, shaking hands with Strahm when the “taste” *129 was delivered and admitting him to the house where the ultimate sale was consummated; that someone in defendant’s house was preventing entry to the police; and that paraphernalia related to the sale of cocaine was present in defendant’s basement. Although standing alone each of these matters could have neutral explanations, together they “so harmonized ‘with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime’ (People v Daniels, 37 NY2d 624, 629)” (People v Cunningham, 48 NY2d 938, 940, supra; People v Smith, 55 NY2d 945, 946; see People v Dordal, 55 NY2d 954). Thus, the evidence corroborating Strahm’s testimony was not insufficient.
Finally, although it would not have been error to charge in the language requested by defendant, the Trial Judge was not bound to use the specific language requested by defendant’s attorney, the more particularly so because the request was not made until after delivery of the charge despite the opportunity to do so at the presummation charge conference held by the Trial Judge. The charge as given adequately apprised the jury of the governing law (People v Lanza, 57 NY2d 807; People v Hudson, 51 NY2d 233, supra; People v Daniels, 37 NY2d 624, supra).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Simons concur.
On review of submissions pursuant to rule 500.2 (b) of the Rules of the Court of Appeals (22 NYCRR 500.2 [g]), order affirmed.

. Officer Anderson testified at the hearing that Strahm had told him that the defendant’s suppliers were in the house with guns and would harm the defendant’s family if anything went wrong.

. All of the majority in People v Young (55 NY2d 419) recognized that observations of an incriminating nature, as here, were suppressible.