OPINION OF THE COURT
John Cataldo, J.
The defendant is charged by simplified traffic information with the crime of aggravated unlicensed operation of a motor vehicle in the second degree (Vehicle and Traffic Law § 511 [2] [a] [iv]). By notice of motion dated January 30, 1995, he moves, pursuant to CPL 710.20 (1) and 710.60, for suppression of Department of Motor Vehicles (DMV) records, or in the alternative for a Mapp/Dunaway hearing. (Mapp v Ohio, 367 US 643 [1961]; Dunaway v New York, 442 US 200 [1979].)
The defendant contends that his vehicle was stopped without reasonable suspicion or probable cause in violation of his constitutional rights. He asserts that he was not committing any traffic infractions or any other offenses at the time of the stop and seizure. Consequently, he seeks to suppress the DMV records obtained by the police officer as a result of the stop of his vehicle. Such records allegedly show that the defendant’s driver’s license had in effect three or more suspensions on at least three dates at the time he was observed driving.
The People oppose a Mapp hearing. The sole assertion by the People in their responding papers is that they do not intend to offer on their direct case at trial any physical evidence seized from the defendant, and therefore a Mapp hearing is unnecessary.
The question before the court is whether the defendant’s DMV records constitute evidence which is potentially suppressible as "fruit of the poisonous tree”. (Nardone v United States, 308 US 338 [1939]; Wong Sun v United States, 371 US 471. [1963].) Although not evidence obtained from the defendant’s person or his tangible property, it is alleged that the use of those records at trial would constitute evidence derived from an illegal seizure. It is apparent that despite the People’s assertion that no tangible property was seized from the defendant, they do intend to introduce the DMV records on their direct case at trial, as those records and/or testimony regarding the content of such records is essential to establishing the elements of the offense.*
*723 It is well settled that the stop of an automobile is a seizure within the meaning of the Fourth and Fourteenth Amendments of the US Constitution. (People v May, 81 NY2d 725 [1992]; People v Sobotker, 43 NY2d 559 [1978]; People v Ingle, 36 NY2d 413 [1975]; Delaware v Prouse, 440 US 648 [1979].) Police stops of automobiles are legal only where there exists at least reasonable suspicion that a driver or occupants of a vehicle have committed, are committing or are about to commit a crime, where a traffic infraction or equipment violation has been observed prior to a stop, or in the case of roadblocks or checkpoints, where they are conducted pursuant to a neutral and nonrandom plan. (People v Sobotker, supra; People v Ingle, supra; People v Scott, 63 NY2d 518 [1984].) Random traffic stops in which police officers request to see a driver’s license and registration constitute an impermissible intrusion on a motorist’s freedom of movement. (People v Ingle, supra, 36 NY2d, at 416.) The State’s interest in ensuring that only qualified drivers are permitted to operate motor vehicles is outweighed by the unbridled discretion that random and arbitrary stops would confer upon enforcement officers. (Delaware v Prouse, supra, 440 US, at 658, 661; People v Ingle, supra, 36 NY2d, at 419.) Consequently, evidence obtained through an arbitrary stop of an individual automobile may not be used against a defendant. (People v Ingle, supra, at 421.)
The primary purpose of the exclusionary rule is not to redress an injury to a particular individual’s privacy, but rather to deter future unlawful police conduct. (See, People v Young, 55 NY2d 419, 424, cert denied 459 US 848 [1982].) The goal of the exclusionary rule, as applicable to this case, is to protect future motorists from arbitrary stops by police. Such *724 stops, which result in the seizure of innocent motorists in addition to ones who may be committing crimes, create substantial anxiety, interfere with the freedom of movement of all drivers and passengers stopped, are inconvenient and time consuming, and constitute a troubling show of police power. (Delaware v Prouse, supra, 440 US, at 657.) Thus, if no sanction were available in this case, where the People’s entire case rests upon information obtained as a result of an alleged illegal stop of the defendants’ vehicle, the purpose of the exclusionary rule would be thwarted.
The People argue, however, that Mapp only applies where physical evidence is seized from the defendant. This position is inconsistent with the long history of the exclusionary rule. The doctrine of the "fruit of the poisonous tree”, first set forth in Nardone v United States (supra), is not limited to suppression of physical tangible evidence but applies as well to evidence which flows from the illegal seizure and search, such as verbal statements, identifications, tests performed upon the defendant, and testimony at trial as to matters observed during the unlawful intrusion. (See, Wong Sun v United States, supra, 371 US, at 485; Davis v Mississippi, 394 US 721 [1969]; People v Rossi, 80 NY2d 952 [1992]; People v Dodt, 61 NY2d 408 [1984]; People v Dory, 59 NY2d 121 [1983]; People v Abruzzi, 52 AD2d 499 [2d Dept 1976], affd 42 NY2d 813, cert denied 434 US 291 [1977]; People v Finger, 166 AD2d 714 [2d Dept 1990], appeal after new trial 208 AD2d 645 [2d Dept 1994]; People v Johnson, 134 Misc 2d 474 [Crim Ct, Queens County 1987]; see also, Comment Note, Evidence — "Fruit of Poisonous Tree”, 43 ALR3d 385.)
In this case, it is alleged that an illegal stop resulted in the police obtaining the defendant’s DMV records by running a computer check of his name and/or license number and receiving a teletype printout revealing a license suspension. Although the information the defendant is seeking to suppress is information contained in the computer records of a State agency, this does not bar suppression. In Mapp v Ohio (supra, 367 US, at 655) it was explicitly stated that "all evidence obtained by searches and seizures in violation of the Constitution is * * * inadmissible in a state court.” In People v Akwa (151 Misc 2d 106 [Sup Ct, Kings County 1991]), in a situation similar to the instant case, the court, inter alia, suppressed police testimony that the defendants were observed in a stolen vehicle. In Akwa, the court concluded, after a hearing, that the defendants had been stopped illegally and a subsequent *725 unlawful search of the vehicle had revealed a gun. The defendants were then arrested and at the precinct it was determined for the first time that the vehicle had been reported stolen. Thus, the rationale underlying Akwa is that the link of the defendants to a stolen car was derived solely from information obtained through an illegal stop and seizure and was therefore suppressible as fruit of the poisonous tree. In the instant case, the defendant’s factual allegations sufficiently assert that an illegal stop occurred and that but for that stop the defendant’s DMV records would not have come to light. Accordingly, a hearing is ordered pursuant to CPL 710.60 (4) to determine the legality of the stop and whether the DMV records and/or any testimony relating thereto, as well as whether any testimony as to observations of the defendant or information obtained from him subsequent to the stop, should be suppressed at a trial of this action.
CONCLUSION
The defendant’s motion for a Mapp/Dunaway hearing is granted.

 Vehicle and Traffic Law § 511 (2) (a) (iv) states:
"A person is guilty of the offense of aggravated unlicensed operation of a *723 motor vehicle in the second degree when such person commits the offense of aggravated unlicensed operation of a motor vehicle in the third degree as defined in subdivision one of this section; and * * *
"(iv) such person has in effect three or more suspensions, imposed on at least three separate dates, for failure to answer, appear or pay a fine, pursuant to subdivision three of section two hundred twenty-six or subdivision four-a of section five hundred ten of this chapter.”
Vehicle and Traffic Law § 511 (1) (a) reads, in relevant part: "A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person’s license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.”