OPINION OF THE COURT
Barbara F. Newman, J.
The defendant is charged with aggravated unlicensed operation of a motor vehicle in the second degree (Vehicle and Traffic Law § 511 [2] [a]). On December 13, 1995 a Mappl Huntley/ Dunaway hearing was held before Judicial Hearing Officer (JHO) Morris Goldman who recommended that the defendant’s suppression motion be denied. The People called one witness at the hearing, Port Authority Police Officer Jocelyn Little, whose testimony was found to be credible by the JHO. By notice of motion filed and served December 26, 1995 the defendant moves to controvert the findings of fact and conclusions of law *488 of the JHO. The findings of fact and conclusions of law of the JHO are rejected.
Findings of Fact
Based upon the credible evidence adduced at the hearing the court makes the following findings of fact:
On October 11, 1995, beginning at 6:00 a.m., Officer Little and her partner were assigned to the area approaching the entrance to the Holland Tunnel in the County of New York. According to Officer Little, beginning in January or February 1993 after the bombing of the World Trade Center, the Port Authority began using "high security” measures at its facilities. Pursuant to these security measures, on the date of the incident, Officer Little was on foot patrol stopping trucks entering the Holland Tunnel.
Neither written guidelines nor other instructions were issued to the officers with regard to how to stop and search these trucks other than an oral instruction from the officers’ chief to stop as many trucks as possible during the day and evening shifts. It was left to the discretion of the individual officers to determine how to effectuate these stops. Officer Little acknowledged that she was encouraged to use her own initiative about what was an appropriate truck to stop.
From 6:00 a.m. to 11:00 a.m. on the date in question, Officer Little had only stopped 10 to 12 trucks. While conducting a stop of a truck, the officer admitted that other trucks of unknown numbers continued into the tunnel without any police interference. There was no evidence that any signs or other indication that trucks were being stopped or inspected were posted in the area. The trucks were simply instructed to stop by the individual officer using hand signals indicating they should pull out of the flow of traffic to be examined.
At approximately 11:00 a.m. the defendant’s commercial truck was pulled over by Officer Little. There was nothing improper or suspicious about the defendant’s vehicle. The defendant’s vehicle was randomly stopped by directing him to pull over and was thereafter searched. The officer checked the cargo inside the truck against the trip sheet and confirmed that the cargo matched that on the sheet. After clearing the cargo, the officer ordered the defendant to produce his driver’s license, registration and insurance. The reason the officer requested identification from the defendant after his cargo was found not to be suspicious was not stated to be related to the security concerns, but was instead described as the basic proce *489 dure the officer used during all motor vehicle stops. The defendant produced the registration and insurance but couldn’t produce his license and stated to the officer, in substance, that "he left it in another truck that he made a previous stop at and could he go back and get it”. The defendant asked to leave but was not allowed to drive on. The officer asked him for a form of identification, and the defendant produced a laminated copy of his birth certificate. The officer used the information from the biyth certificate as well as other information she obtained from the defendant (place of residence, Social Security number, date of birth, height, eye color, weight) in order to run a computer check on him. The defendant was held at the scene for five to seven minutes during the computer check of his DMV records which revealed that defendant had 12 suspensions on five dates. Pursuant to the radio run received as to his DMV records he was arrested for violation of Vehicle and Traffic Law § 511 (2) (a).
Conclusions of Law 1. Dunaway! Huntley Motion
The defendant was stopped and seized within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and article I, § 12 of the New York State Constitution when his truck was ordered to pull out of the flow of traffic. (Delaware v Prouse, 440 US 648 [1979]; People v Scott, 63 NY2d 518 [1984]; People v Sobotker, 43 NY2d 559 [1978]; People v Ingle, 36 NY2d 413 [1975].) In order to demonstrate that the stop of the defendant was proper, the People have the burden of going forward in the first instance with evidence to demonstrate the legality of the action taken by the police officers. (People v Berrios, 28. NY2d 361, 367 [1971]; People v Malinsky, 15 NY2d 86 [1965].) The evidence is uncontroverted that the defendant’s vehicle was not stopped based upon reasonable suspicion that a crime was occurring or about to occur, or based upon any traffic infractions or equipment violations. Therefore, in order to meet their burden in the instant case, the People must demonstrate that the stop of the defendant was conducted pursuant to a valid roadblock or checkpoint set up and carried out according to nonarbitrary and uniform procedures. (People v Scott, supra; People v John BB., 56 NY2d 482, cert denied 459 US 1010 [1982]; People v Ingle, supra.) Such stops must be carried out pursuant to a plan embodying explicit and neutral limitations on the conduct of individual officers. (People v Scott, supra, at 525.) It is important that the plan leave little discre *490 tion to the individual officers as to which vehicles to stop. (Supra.) Additionally, visible manifestations of the presence of a checkpoint, such as signs announcing its existence and purpose or other indications to alert motorists to the presence of a uniform system for stopping vehicles, are an important factor in assessing the propriety of the checkpoint. (Supra, at 527.)
Here, there were no written guidelines issued to the officers. Despite a statement of a potentially appropriate governmental interest in stopping the vehicles, there was no evidence presented as to how sporadically stopping trucks when possible to do so would effectuate that purpose. (People v Scott, supra, at 525.) There was no evidence presented at the hearing that any threats had been made at the Holland Tunnel on or about that date. Nor was it shown how only stopping some trucks during some shifts, but not stopping other types of vehicles and not stopping trucks on a 24-hour basis would make the tunnel secure. In any event, even if the governmental purpose had been shown to be sufficiently advanced by a checkpoint, the manner in which this checkpoint was operated failed to meet even the most basic requirements established by the Court of Appeals. Here there was no uniform, nonarbitrary plan. Instead, it was explicitly left to the discretion of the individual officers to determine which trucks to stop and how to effectuate the stops. The only "guideline” issued was an oral instruction to stop as many trucks as possible. This left it entirely to Officer Little and other officers to decide which trucks and how many trucks to stop. Moreover, there were no visible manifestations that a checkpoint was in effect at the Holland Tunnel. The officers would simply order a truck to pull over, as they did in the defendant’s case.
Accordingly, as none of the appropriate procedures or safeguards required for constitutional checkpoint stops were followed in this case, the defendant’s Dunaway! Huntley motion is granted.
2. Mapp Motion
The People contend that even if they were to concede an unlawful stop of the defendant, which they do not, the DMV records are not suppressible fruit of such an unlawful stop or detention. The People assert that just as a defendant’s body or identity cannot be suppressed at the time of trial as the fruit of an unlawful stop or arrest (Immigration & Naturalization Serv. v Lopez-Mendoza, 468 US 1032 [1984]; United States v *491 Crews, 445 US 463 [1980]), the DMV records concerning the defendant, which are maintained independently by a State agency, are a mere extension of the discovery of the defendant’s identity and cannot be suppressed as "fruit of the poisonous tree”. (United States v Guzman-Bruno, 27 F3d 420 [9th Cir], cert denied 115 S Ct 451 [1994].) The People state that the DMV records are not the product of an illegal stop or detention in that they are public records already in the possession of a public agency to which the police and the People always have access, and are therefore not subject to the exclusionary rule. (State v Leyva, 599 So 2d 691 [Fla 1992]; State v Ramos, 598 So 2d 267 [Fla 1992].) Furthermore, the People argue that the defendant lacks standing to seek suppression of these records. (United States v Pineda-Chinchilla, 712 F2d 942 [5th Cir], cert denied 464 US 964 [1983].)
The defendant asserts that he has never sought suppression of his identity, which he concedes may not be suppressed, but instead seeks to suppress the DMV records on the theory that they constitute evidence which was obtained as a result of his illegal detention and which would not otherwise have come to the attention of the police officers. It is defendant’s position that the exclusionary rule, which applies to both tangible and intangible evidence tainted by a primary illegality, extends to the records on file with the Department of Motor Vehicles concerning the defendant. (See, People v Rossi, 80 NY2d 952 [1992]; People v Dory, 59 NY2d 121 [1983]; People v Thomas, 164 Misc 2d 721 [Crim Ct, NY County 1995]; People v Rizwan, 165 Misc 2d 985 [Crim Ct, NY County 1995].) Furthermore, the defendant contends that the People’s challenge to his standing is misplaced, as his standing arises from the illegal stop and detention of his person, without any requirement that he have an expectation of privacy in the alleged "fruits” he seeks to suppress.
Initially, the court notes that the People’s standing argument is flawed. The defendant correctly notes that his standing does not arise from any expectation of privacy in the items which are alleged to be the "fruit of the poisonous tree”, but that his standing arises from the alleged violation of his expectation of privacy and the restraint on his liberty emanating from the unlawful stop or detention itself. (People v May, 81 NY2d 725, 727-728 [1992].) The law does not require a defendant to demonstrate an expectation of privacy in the items sought to be suppressed as tainted fruit of an unlawful stop. Inasmuch as this court has ruled that the defendant was *492 unlawfully stopped and detained, he has standing to move to suppress evidence obtained as a result of the tainted stop, if such evidence is of a type which is properly considered the "fruit of the poisonous tree”.
This court finds, however, that the DMV records concerning the defendant do not constitute evidence which is subject to suppression under a "fruit of the poisonous tree” analysis. (Wong Sun v United States, 371 US 471 [1963].) The records defendant seeks to suppress, kept in the regular course of business by the Department of Motor Vehicles as statutorily required by the Vehicle and Traffic Law, contain a listing of the Department’s assertions of this defendant’s then existing driver’s license suspensions. These records were independently created by a State agency for law enforcement purposes prior to and separate from any police illegality involved in the defendant’s detention. (United States v Guzman-Bruno, 27 F3d, supra, at 421; Hoonsilapa v Immigration & Naturalization Serv., 575 F2d 735, 738, mod 586 F2d 755 [9th Cir 1978].) While the reach of the exclusionary rule extends beyond tangible evidence to statements, identifications, fingerprints and even police observations (Wong Sun v United States, supra; People v Dory, supra; Davis v Mississippi, 394 US 721 [1969]), in this situation, its reach does not extend to the preexisting records of the State agency charged with performing the critical function of establishing safety of the public roadways.
The records of the DMV in this case are beyond the aim and beyond the reach of the exclusionary rule. (See, State v Ramos, supra, at 268.) Suppression of the DMV record is not justified by the law or the facts in this case. (See, People v Young, 55 NY2d 419, 425, cert denied 459 US 848 [1982].) In this case, the defendant’s statements made after the unlawful stop have been suppressed. This is the appropriate and justifiable penalty for the police conduct in this case.
Conclusion
Defendant’s Mapp motion to suppress the DMV records is denied. Defendant’s Dunaway!Huntley motion is granted.*

 This decision is an edited decision incorporating portions of two decisions of this court in this matter dated January 12,1996 and March 29,1996.