*809 OPINION OF THE COURT
Patricia M. DiMango, J.
Defendant, Reginald Cobb, charged with aggravated unlicensed operation of a motor vehicle, an unclassified misdemeanor, Vehicle and Traffic Law § 511 (2) (a) (iv), moves to suppress police discovery of the Department of Motor Vehicles records detailing his outstanding traffic summonses. He contends that the police lacked probable cause to stop his vehicle; hence, any evidence derived as a result of the unlawful stop must be suppressed as the fruit of the poisonous tree.
The People oppose the motion in all respects, arguing first that the defendant’s motion should be denied without a hearing on two grounds. They allege that defendant Cobb lacks standing to challenge the search and, more importantly, the abstract which constitutes a public document is not within the scope of exclusionary rule sanctions. They further contend that in any event a hearing would establish that the stop, based on a traffic infraction, was lawful and evidence of defendant’s suspended license was properly obtained and should not be suppressed.
Defendant’s pretrial motion for an Ingle-Dunaway-Mapp hearing was granted and referred to this court. The only witness to testify was Police Officer (P.O.) Keith Wallen of the 79th Precinct Robbery Apprehension Module. Based on the credible testimony, I make the following findings of fact and reach the following conclusions of law.
On May 9, 1997 at approximately 3:00 p.m. at Sanford Street, between Willoughby and Myrtle Avenues, in the 79th Precinct in Kings County, P.O. Keith Wallen of the Robbery Apprehension Module, and his partner, Detective Corrin Stokley, were investigating a robbery. They were dressed in plain clothes and seated in an unmarked police automobile, completing paperwork with a civilian seated in the back. They were double parked on Sanford Street, a narrow one-lane road. Although the officer testified inconsistently as to whether Sanford was northbound or southbound, it was cleár that his auto was facing the wrong way, with vehicles on either side, obstructing the flow of vehicular traffic. The defendant, Reginald Cobb, was traveling in a brown Plymouth mini-van in accordance with the direction of traffic on Sanford Street. He was compelled to stop as his van came nose-to-nose with the officer’s unmarked automobile. Wallen testified that after waiting, the defendant beeped his horn five or six times. The officer, without *810 displaying a shield, held up his hand, motioned for the defendant to wait and sounded his siren. The defendant then drove his mini-van around a UPS truck and onto the sidewalk in an effort to proceed on his way. He was thereupon stopped by P.O. Wallen, and a subsequent check of his license and registration revealed that his license to drive in this State was suspended 36 times on 10 dates and had never been reinstated. The officer testified that, although the basis for the stop was that the defendant did drive on the sidewalk, a traffic offense, no summons was issued for any Vehicle and Traffic Law infraction.
LAW
At the threshold of any motion to suppress evidence is the preliminary determination that a defendant has standing to challenge the search. (People v Ponder, 54 NY2d 160 [1981].) The People contend that the motion to suppress should be denied, ab initia, without the necessity of conducting a hearing. They argue that because the defendant does not have a privacy interest in the Department of Motor Vehicles (DMV) records, he lacks standing to challenge their discovery. The defendant correctly asserts that in the case of motor vehicle searches, his standing emanates not from any privacy interest in the documents, but from the stop and detention of his person. He urges this court to find that the stop of his vehicle was pretextual at best, and to suppress the DMV records as the tainted fruit of the poisonous tree. (Wong Sun v United States, 371 US 471 [1963]; People v May, 81 NY2d 725 [1992]; People v Ingle, 36 NY2d 413 [1975].)
Although, generally, a favorable standing ruling would permit a defendant to reach the merits at a hearing, the prosecution raises an issue equally as crucial to the ultimate determination of a suppression ruling. They contend that even assuming, arguendo, the unlawfulness of the police action at the inception, the evidence which constitutes the subject of the motion must be that which is embraced by the exclusionary rule and urge this court to find that the DMV documents fall outside the contemplated purpose of this constitutional violation.
Whereas in most cases, implicit in the initial granting of a hearing is the determination that the challenged evidence is subject to exclusionary rule sanctions, when that evidence consists of the DMV abstract, that issue has not been squarely resolved and requires some analysis. (See, People v Smith, 170 Misc 2d 486 [Crim Ct, NY County 1996, Newman, J.] [DMV records are independently created by State agency and are, *811 therefore, beyond the aim and scope of the exclusionary rule]; contra, People v Santiago, 168 Misc 2d 883 [Crim Ct, NY County 1996, Stolz, J.] [suppression of abstract is proper where stop of vehicle is unlawful, since abstract falls within the contemplated purpose of the exclusionary rule].)
For the purpose of exclusionary rule sanctions, “fruits” of a Fourth Amendment violation have been defined broadly to include tangible and intangible evidence (Sibron v State of New York, 392 US 40 [1968]); objects discovered inadvertently as well as words overheard (United States v Giordano, 416 US 505 [1974]); statements and confessions of the accused and identification proceedings (Dunaway v New York, 442 US 200 [1979]; United States v Crews, 445 US 463 [1980]). Yet, as the People suggest, this definition is not all encompassing or without exception.
Federal courts have held that an individual’s identity is never itself suppressible as a “fruit” of an unlawful arrest. In United States v Crews (supra), the Supreme Court considered the evidentiary consequences emanating from a Fourth Amendment violation and held, inter alla, that the concededly unlawful arrest of Crews did not mandate suppression of Crews himself. (Supra, at 469.) The “body” or identity of the defendant does not constitute a “suppressible fruit” within the scope and purview of the exclusionary rule, even where the court finds after a hearing that an “unlawful arrest, search, or interrogation occurred.” (Immigration & Naturalization Serv. v Lopez-Mendoza, 468 US 1032, 1039 [1984]; Gerstein v Pugh, 420 US 103, 119 [1975].) Since an arrest standing alone is not suppressible, the prosecution may proceed with a trial and may establish guilt through the introduction of evidence not tainted by the unlawful police conduct. (United States v Crews, supra, at 469; Immigration & Naturalization Serv. v Lopez-Mendoza, supra, at 1039 [identity not suppressible in civil or criminal proceedings even if preceded by a concededly unlawful arrest].) In fact, Officer Wallen could testify to his observations of the defendant Cobb driving the vehicle prior to the stop, since they preceded the arrest and would not be tainted or affected by any subsequent police action. (See also, State v Leyva, 599 So 2d 691 [Fla 1992]; State v Ramos, 598 So 2d 267 [Fla 1992]; Immigration & Naturalization Serv. v Lopez-Mendoza, supra.)
State courts following this line of reasoning have ruled accordingly. (See, People v Pleasant, 76 AD2d 244, affd 54 NY2d 972, cert denied 455 US 924 [1982]; State v Ramos, 598 So 2d *812 267 [Fla 1992], supra; State v Leyva, 599 So 2d 691 [Fla 1992], supra; People v Smith, supra; contra, People v Santiago, supra.) “The constitutional provisions do not prevent the use of the People’s knowledge of the identity of the defendant even if acquired through violation of the constitutional proscriptions, nor would any such antecedent illegality, to the extent that it led to knowledge of [one’s] identity as distinguished from evidence of [one’s] guilt, restrict the procedures to be employed or the evidence to be relied on for * * * subsequent prosecution.” (People v Pleasant, 54 NY2d 972, 977 [1981] [concurring opn Jones, J.], cert denied 455 US 924 [1982] [evidence considered exploited only when there exists a reasonable nexus between the tainted conduct and the proposed evidence].) Critical to this analysis is a determination of whether or not the subject evidence “was obtained by official ‘exploitation’ of the ‘primary illegality’ within the meaning of Wong Sun * * * the principal issue [being] whether the unlawful police behavior bore a causal relationship to the acquisition of the challenged testimony.” (United States v Crews, supra, at 469.)
The prosecution contends that where that evidence consists of the DMV abstract, a public record kept and maintained by the Department of Motor Vehicles, an independent State agency, that “causal relationship” does not exist. There is ample support for this position. Accordingly, exclusionary rule sanctions have been deemed inapplicable to fingerprint files (Bynum v United States, 262 F2d 465 [DC Cir 1958]); a photograph retrieved from the Bureau of Criminal Identification files (People v Pleasant, supra); records of preexisting criminal convictions and deportations (United States v Guzman-Bruno, 27 F3d 420 [9th Cir 1994]); as well as records of defendant’s suspended license (State v Leyva, supra; State v Ramos, supra; People v Smith, supra), as these constitute public records in the hands of independent agencies antedating any alleged misconduct.
In Bynum v United States (supra), defendant was held without probable cause and, although fingerprints taken during the illegal detention were suppressed as the tainted fruit of the unlawful arrest, older prints previously on file with the FBI were determined not to be connected to the illegality. The court suggested that the prosecution could proceed against the defendant with these preexisting and properly obtained prints. (Bynum v United States, at 469.) As stated by the Court in Crews, “the Fourth Amendment violation * * * yielded nothing of evidentiary value that the police did not already have in *813 their grasp. Rather, [the] unlawful arrest served merely to link together two extant ingredients * * * The exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality.” (445 US 463, 475, supra.)
In determining whether or not to apply the exclusionary rule to a proceeding, courts must “weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs.” (Immigration & Naturalization Serv. v Lopez-Mendoza, 468 US 1032, 1041, supra; see, United States v Janis, 428 US 433 [1976].) The primary benefit of the exclusionary rule is not thwarted by denying suppression of the DMV abstract, since in addition to the discovery of an individual’s suspended license, vehicle stops may reveal evidence of a driver’s intoxication, or the discovery of other contraband, such as weapons or drugs, as well as any other evidence, tangible or intangible, tending to connect an occupant of the vehicle to the commission of an offense. Therefore, police would necessarily shape their conduct in auto stops in anticipation that other evidence derived therefrom would be subject to exclusionary rule sanctions. The potential for suppression of this other evidence is a sufficient safeguard against unlawful and precipitous police action.
Furthermore, offenses which constitute continuing violations of law pose a unique social threat. “Presumably no one would argue that the exclusionary rule should be invoked to prevent an agency from ordering corrective action at a leaking hazardous waste dump if the evidence underlying the order had been improperly obtained, or to compel police to return contraband [sic] explosives or drugs to their owner if the contraband had been unlawfully seized.” (Immigration & Naturalization Serv. v Lopez-Mendoza, 468 US 1032, 1046, supra [immigration violations are continuing violations of law].) Public policy, similarly, would not require that the defendant’s license be reinstated or that he be permitted to drive while the suspensions are in effect. Unlike a coerced statement or a suggestive identification proceeding this holding does not “transgress notions of fundamental fairness and undermine the probative value of the evidence obtained.” (Supra, at 1050-1051.)
The concept of denying suppression without a hearing is not a novel one. No one would quarrel with the introduction of evidence at trial against a defendant who was denied an eviden-tiary hearing because he lacked standing to challenge the search which led to its discovery (People v Mendoza, 82 NY2d *814 415 [1993]), or because, procedurally, the attorney did not request hearings within the prescribed time authorized by statute (CPL 710.40 [1]). Furthermore, the admissibility of any such evidence does not bar acquittal, since defendants may still assert at trial any defense available to them. Hence, where “there is no sanction to be applied when an illegal arrest only leads to discovery of the man’s identity and that merely leads to the official file or other independent evidence,” then, a forti-ori, to require a hearing where the only issue to be determined is the admissibility of the DMV abstract is superfluous. (Hoonsi-lapa v Immigration & Naturalization Serv., 575 F2d 735, 738 [1978]; United States v Guzman-Bruno, 27 F3d 420, 422, supra.)
An Ingle-Dunaway-Mapp hearing, however, was conducted in accordance with the previous ruling. On a motion to suppress the People bear the initial burden of going forward with evidence to demonstrate the lawfulness of the police conduct in the first instance. (People v Malinsky, 15 NY2d 86 [1965].) Thereafter, the burden shifts to the defendant to demonstrate by a preponderance of the credible evidence that the police acted unlawfully. (People v Sidhom, 204 AD2d 150 [1st Dept 1994].)
The police may not arbitrarily stop a vehicle from traveling along public roads on “mere whim, caprice, or idle curiosity,” since this constitutes an impermissible intrusion on the motorist’s freedom of movement. (People v Ingle, 36 NY2d 413, 420 [1975], supra.) A vehicle is stopped lawfully when the police have reasonable cause to believe that an occupant of the vehicle has committed, is committing or is about to commit a crime; where a traffic infraction or an equipment violation has been observed or the stop is conducted pursuant to a neutral, nonrandom roadblock or checkpoint. (People v Ingle, supra; People v Carvey, 89 NY2d 707 [1997].) Without condoning P.O. Wallen’s blatant abrogation and disregard for the traffic rules he is engaged to enforce, the remedial conduct chosen by the defendant Cobb, nevertheless, constitutes a traffic infraction (Vehicle and Traffic Law § 1225-a). The officer’s failure to issue a summons for defendant’s driving along the sidewalk does not, thereby, invalidate the reason for the stop and detention. (People v Garcia, 179 AD2d 1047, 1049 [4th Dept 1992]; People v Mikel, 152 AD2d 603, 604-605 [2d Dept 1989].)
Accordingly, I find the stop of defendant’s vehicle, based on a traffic infraction, lawful; the subsequent discovery of the DMV abstract proper, and not the tainted fruit of the poisonous tree. *815 However, as previously noted, I would have denied suppression without a hearing for the reasons previously stated.