*671 OPINION OF THE COURT
Wayne Saitta, J.
The defendant, Daniel Moya, was arraigned in Kings County Criminal Court on February 24, 2002 and charged with violating Vehicle and Traffic Law § 511 (1) (a), aggravated unlicensed operation of a vehicle, and § 509 (1), unlicensed operator. By notice of motion dated July 9, 2002, the defendant moves for an order: (1) suppressing Department of Motor Vehicles (hereinafter DMV) records and observations of defendant; (2) reserving defendant’s right to file further motions pursuant to CPL 255.20; and (3) for such other and further relief as this court deems just and proper. The People filed and served an affirmation in opposition dated July 26, 2002, along with a memorandum of law.
Upon reading the defendant’s notice of motion, the People’s affirmation and memorandum of law in opposition to defendant’s motion, all documents, annexed exhibits and appendices, and upon all the proceedings heretofore had herein and after due deliberation, the motion is granted to the extent of suppressing all observations and statements of defendant made after the stop of the vehicle and suppressing evidence of his DMV records. Also that part of the motion reserving defendant’s rights to file further motions is granted.
Facts
The defendant was arrested on February 23, 2002 at 3:50 p.m. on Bedford Avenue in Kings County, near a garage located at 364 Bedford Avenue which was the subject of a search warrant.
The issuing court found that there was “probable cause for believing that certain property, namely: a 1999 Toyota 4Run-ner will be found in the location” based on a Lojack search conducted by the Brooklyn North Auto Larceny Unit. The search warrant authorized the search of the garage at the location and “of any person who may be found to have such property in his possession or under his control, or to whom such property may have been delivered.” The defendant was not named in the warrant.
Pursuant to the execution of the search warrant, Police Officer Michael O’Rourke observed one Luis Rodriguez enter, exit and lock the garage named in the search warrant. The defendant, Daniel Moya, was observed on the street near the location working on a 1987 Volvo station wagon. Thereafter, Mr. *672 Rodriguez entered the 1987 Volvo. Mr. Moya entered the Volvo and drove away with Mr. Rodriguez as a passenger.
Officer O’Rourke stopped the Volvo and asked the defendant, Moya, for his driver’s license. After the defendant stated that he did not have a driver’s license, the officer conducted a check of the official computerized Department of Motor Vehicles driving records. The DMV check showed that the defendant was driving with a suspended license.
It is not alleged that the defendant, Daniel Moya, entered the location subject to the search warrant at any time. It is not alleged that Rodriguez was attempting to flee from or elude the officer at the time of the stop. Further, the defendant Moya was not observed committing a traffic offense or any other criminal activity.
Defense counsel submits that the inquiry into defendant’s driver’s license and DMV records were a direct result of an illegal stop and seizure and, therefore, the records should be suppressed. Additionally, defense counsel contends that Daniel Moya had a privacy interest in his DMV records under the Federal Driver’s Privacy Protection Act (18 USC § 2721). Specifically, defense counsel seeks to suppress all of the defendant’s DMV driving records and the identity of the defendant as the driver of the 1987 Volvo. In the alternative, the defense requests a hearing to aid the court in determining the issues raised herein.
The People submit that the defendant’s motion to suppress should be denied because the police possessed reasonable suspicion to stop the 1987 Volvo pursuant to the search warrant, and to investigate its occupants and any criminal activity.
The issues herein are: (1) whether the police officer’s stop of the 1987 Volvo constituted an illegal seizure; (2) whether the police were authorized to ask defendant for his license; and (3) whether the defendant had a privacy interest in his DMV driving records pursuant to the Federal Driver’s Privacy Protection Act (18 USC § 2721).
There is no dispute between the parties as to the underlying facts and therefore it is not necessary to hold a hearing in order to decide the motion.
Analysis
A stop of an automobile constitutes a seizure. (People v Sobotker, 43 NY2d 559 [1978].) The New York Court of Appeals has held that a police officer may stop an automobile where he *673 reasonably suspects a violation of the Vehicle and Traffic Law or has specific and articulable facts which, when taken together with rational inferences from these facts, reasonably warrants the intrusion. The police cannot stop a car, based on an officer’s mere “whim, caprice, or idle curiosity.” (People v Ingle, 36 NY2d 413, 420 [1975].) This standard is strictly adhered to by the courts. For example, even where a police officer observes a motorist engaged in “erratic driving,” the officer must be able to support his conclusion with articulable facts. (People v Elam, 179 AD2d 229, 238 [1st Dept 1992].)
In the instant case, the People concede that the defendant’s seizure was not a result of a violation of the Vehicle and Traffic Law. Additionally, the People do not allege that the police officer who conducted the seizure reasonably suspected that the defendant had committed a traffic offense.
However, an officer may also stop a vehicle to investigate criminal activity when he has a reasonable suspicion that its occupants have been engaged, are presently engaged, or are about to engage in conduct in violation of the law. (Sobotker, supra at 561; People v Stroller, 42 NY2d 1052.)
Reasonable suspicion is defined as the “quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe that criminal activity is afoot.” (People v Cantor, 36 NY2d 106, 112-113 [1975].) In assessing the reasonableness of a seizure, a court must balance the intrusion of the police conduct against the governmental interests at issue. (People v John BB., 56 NY2d 482 [1982].) Absent reasonable suspicion, the stop constitutes an impermissible seizure of the vehicle’s occupant’s and any evidence seized as a result must be suppressed.
The People submit that Officer O’Rourke possessed a reasonable suspicion to stop the 1987 Volvo and to investigate its occupants and any criminal activity, pursuant to the search warrant.
Here, Officer O’Rourke had a search warrant authorizing him to search a garage located at 364 Bedford Avenue, Brooklyn, New York, for a stolen car and “any persons who may be found to have such property in his possession or control.” After observing Rodriguez enter, exit, and lock the garage the officer saw Rodriguez get into the 1987 Volvo which was driven by the defendant. Rodriguez was a passenger in the car when it was stopped.
Officer O’Rourke’s observations of Rodriguez provided a sufficient basis to believe that Rodriguez was engaged in conduct *674 in violation of the law, and was a person in possession or control of the property which was the subject of the search warrant. This gave the officer a lawful basis to stop and seize Rodriguez. Because Rodriguez had entered the 1987 Volvo driven by the defendant, it was necessary to stop the vehicle in order to seize Rodriguez.
Upon stopping the 1987 Volvo to seize Rodriguez, Officer O’Rourke proceeded to ask the defendant Moya for his driver’s license. When the defendant could not produce a valid driver’s license, the officer conducted a search of the DMV records which established that the defendant was driving having had his privilege to do so suspended.
This set of circumstances presents a unusual situation in which a stop of a vehicle is lawful not based on a traffic infraction, Vehicle and Traffic Law violation, or any act of the defendant, but for the purpose of seizing an occupant of the vehicle because of criminal activity that was totally unrelated to his being an occupant of the car.
A valid stop can become illegal if its scope is unreasonably extended beyond its original purpose. (People v Alexander, 189 AD2d 189 [4th Dept 1993]; see also United States v Brignoni-Ponce, 422 US 873, 881-882 [1975] [where border patrol officers initially stopped the vehicle on the suspicion that it contained aliens who were illegally in the country. The Supreme Court found that any further detention or search must be based on probable cause].)
Here, the lawful purpose of the stop of the Volvo was merely to seize Rodriguez, a suspected car thief. The stop of the 1987 Volvo itself and its driver, defendant Moya, was incidental to the lawful seizure of the passenger. As discussed above, the People concede that Officer O’Rourke did not observe the defendant commit a traffic offense, nor did he allege any “articulable facts” showing he reasonably suspected a violation of the Vehicle and Traffic Law. (See, Ingle, supra at 420.) Additionally, there were no allegations that any criminal act being investigated or observed by Officer O’Rourke involved the 1987 Volvo or defendant Moya.
The People contend that Officer O’Rourke’s reasonable suspicion that Rodriguez was in control of the garage which was the subject of the search warrant allowed the officer to investigate the car’s occupants and any criminal activity. However, the warrant and the observations only gave the officer authority to investigate the criminal activity described in the warrant.
*675 The facts in this instance are distinguishable from circumstances which fall under the plain view doctrine. Under the plain view doctrine, officers may seize evidence that comes into plain view while the officers are lawfully at the place where they see the evidence. (People v Milaski, 62 NY2d 147, 155 [1984].) Here, there are no allegations that Officer O’Rourke saw any Vehicle and Traffic Law violations or criminal activity occurring in the car. Nor is it alleged that the officer saw any contraband in plain view upon approaching the car and questioning Rodriguez and the defendant. The request for the defendant’s license and the search of the defendant’s DMV records were not the result of a plain view observation, but the result of an overt inquiry by the officer into additional matters, completely unrelated to the basis for the stop.
Where an officer makes a lawful stop the officer can conduct an inquiry into matters related to the basis for the stop, but the inquiry must be limited to such matters and cannot go into unrelated matters. (People v Guzman, 153 AD2d 320 [4th Dept 1990].)
The People argue that Officer O’Rourke’s request for defendant’s driver’s license was a level I intrusion under De Bour in which an officer may approach a citizen to request nonthreatening information, when there is some object credible reason to do so. The People cite People v De Bour (40 NY2d 210 [1976]) and People v Hollman (79 NY2d 181 [1992]) for the proposition that even absent any indicia of criminality an officer may conduct level I inquiry involving basic nonthreatening questions, such as identity, that do not indicate the person is the subject of an investigation. However, under the circumstances in this case, the request for defendant’s license constituted not a level I inquiry, but a level II inquiry pursuant to the common-law right to inquire.
Asking a person who is stopped while driving a motor vehicle for a driver’s license is different and more intrusive than simply asking for identification. Though a driver’s license is a common form of identification it is not the only form. Further, while there is no general requirement for a citizen to carry identification, it is a violation of the Vehicle and Traffic Law to drive without a license. The request for the license went beyond mere information gathering but focused on the defendant as a potential violator of Vehicle and Traffic Law § 509. In substance, the question asked the defendant whether he was in violation of the Vehicle and Traffic Law and was thus an inquiry into possible criminal activity. Such a level II inquiry *676 must be based upon a founded suspicion that criminal activity is afoot. (People v De Bour, 40 NY2d 210 [1976].)
In this case, however, the criminal activity was totally unrelated to the defendant or the car he was driving and thus did not provide a basis to question the defendant about his license. This is so even though the stop of the vehicle was lawful, because the stop of the vehicle was incidental to stopping the passenger of the vehicle. The law is clear that a vehicle stop, even if justified for a traffic infraction, may not be used to investigate an unrelated matter. (People v Woods, 189 AD2d 838 [1993].)
Additionally, since the officer’s search of the defendant’s DMV records was based on the improper questioning of the defendant, the contents of the records must be suppressed. Evidence derived from an illegal search of a place or a person must be suppressed. (Wong Sun v United States, 371 US 471, 485 [1963].)
Because the defendant had not committed a traffic infraction, he had a reasonable expectation of privacy as to his DMV records. While it is generally true as the People pointed out citing People v Williams (158 Misc 2d 933 [Crim Ct, NY County 1993]), that where a driver cannot produce a license the officer can then detain the driver to determine his identity; this is only true where the officer had a lawful basis to ask for the license in the first instance.
Sanctions under the exclusionary rule have been defined broadly to include intangible and tangible evidence; objects discovered accidentally in addition to overheard words; confessions and statements of the accused; identification proceedings and police observations. (People v Gethers, 86 NY2d 159 [1995]; see also People v Ingle, 36 NY2d 413 [1975]; People v Santiago, 168 Misc 2d 883 [1996].)
In this situation it is not the body or identity of the defendant that is sought to be suppressed but the identification of defendant. This is not a case where there is an outstanding warrant for the defendant or the defendant is subject to a civil hearing for deportation, and objects to the manner he was brought before that court. (I.N.S. v Lopez-Mendoza, 468 US 1032 [1984]; United States v Ortiz-Gonzalbo, 946 F Supp 287 [SD NY 1996].) In this case what is sought to be suppressed is the connection of the identity of the defendant to his DMV records indicating that his license was suspended.
There is split authority in this state on the specific issue of whether DMV abstracts are suppressible as fruit of an unlaw *677 ful stop. (See People v Santiago, 168 Misc 2d 883 [1996]; People v Thomas, 164 Misc 2d 721 [1995] [abstract suppressed]; but also People v Cobb, 182 Misc 2d 808; People v Smith, 170 Misc 2d 486 [holding abstract not suppressible].)
In People v Santiago (supra), defendant was observed driving a motor vehicle on a public highway, stopped by police and upon a check with the DMV he was arrested after the DMV abstract showed nine license suspensions on three different dates without the license having been reinstated. The court in suppressing the DMV abstract held that the preexisting DMV records are suppressible as “fruit of the poisonous tree” and that suppression “applies * * * to evidence which flows from illegal seizures, such as verbal statements, identifications, and testimony at trial as to matters observed during or resulting from the unlawful seizure.” (Santiago, supra at 886.)
As stated above an arrest for violating Vehicle and Traffic Law § 511 (1) involves not just the identity of the defendant. The identification as the operator of the vehicle is inextricably linked with generation of the abstract. Without the identification of the defendant operating a motor vehicle there is no violation of Vehicle and Traffic Law § 511 even though the abstract shows his or her license is suspended. Without the identification of the defendant operating the vehicle the police officer cannot access the DMV abstract.
The Appellate Term, Second Department, has held in People v Sajous (180 Misc 2d 693 [App Term, 2d Dept]) that a DMV abstract is not suppressible because a driver has no expectation of privacy in the abstract. However, Congress has created a privacy interest in motor vehicle records pursuant to the Federal Driver’s Privacy Protection Act. (18 USC § 2721.) The DMV abstract of a driver’s record falls within the definition of a motor vehicle record under the act. (18 USC § 2725 [1].)
The federal act does provide that motor vehicle records may be disclosed to “any government agency, court, or law enforcement agency, in carrying out its functions.” (18 USC § 2721 [b] [1].) Such a permitted disclosure only applies to lawful functions of an agency, and so is inapplicable to the instant case where the officer exceeded the lawful basis for the stop by his inquiry into defendant’s license status.
Suppression of the abstract is warranted because its discovery was neither attenuated from the unlawful questioning; derived from a source independent of the unlawful questioning; nor was its discovery inevitable aside from the unlawful questioning. The discovery by the officer that *678 defendant’s records indicate he was driving with a suspended license was a direct result of the unlawful questioning. But for the questioning the officer would not have discovered records of defendant’s suspensions.
Further Motions
The People did not oppose defense counsel’s request to reserve the defendant’s right to make further motions pursuant to CPL 255.20.
Wherefore, the court finds that in questioning the defendant about his license and searching for. his DMV records, the officer unreasonably exceeded the lawful scope of the stop. As such, the court grants the defense counsel’s motion to suppress all observations and statements of defendant made after the stop of the vehicle, and to suppress evidence of his DMV records. The court also grants defendant’s request to reserve his right to make further motions pursuant to CPL 255.20.