OPINION OF THE COURT
Phillip R. Rumsey, J.
In this proceeding, relator Mark Thompson seeks to suppress evidence that he believes might be used against him in a final parole revocation hearing, on the ground that it is the “fruit” of an improper search or seizure. After considering the evidence introduced at a testimonial hearing held on February 8, 2005, the court has made the following factual findings.
At sometime between 1:00 and 3:00 a.m. on the morning of December 11, 2004, a number of Binghamton city police officers and New York state parole officers entered a bar known as “Ra’nelles” in the City of Binghamton. They secured the exits, turned on the lights, and directed the patrons to line up and prepare to show identification. The purpose of the review was to identify any parolees, who, due to the time and location, would be presumed to be in violation of the terms of their parole.[1]
Thompson was seen in the establishment by each of the three officers (two parole officers and one police officer) who testified. At some point, he approached a police officer and produced identification. He was asked if he was on parole, and responded that he was not. A computer search was then conducted, which revealed that Thompson was, in fact, on parole in New York City. At that point Thompson informed a parole officer that he had a travel pass. Because he could not produce such a pass, he was arrested and held as a parole violator. After an initial hearing produced a finding of probable cause to believe that a violation had occurred, petitioner brought this proceeding seeking immediate release or, alternatively, an order precluding respondent Division of Parole (hereinafter respondent) from introducing certain evidence at his final parole revocation hearing.
Thompson contests the validity of the warrant that ostensibly provided the authority for his arrest, as well as the procedures *766 used by the officers conducting the bar search and review of patrons’ identifying documents. Because of alleged deficiencies in these procedures, or a lack of sufficient grounds to justify the police intrusion upon his privacy, Thompson contends any evidence of his identity or status as a parolee must be suppressed (see, generally, People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76, 83 [1979]).[2]
Petitioner has, however, failed to demonstrate that any evidence relevant to his guilt or innocence of the charged infractions was obtained or discovered as a result of the conduct that he characterizes as illegal, to wit, the officers’ actions in entering and securing the bar; their general request that patrons produce identification; the questions asked of petitioner in particular, regarding his parole status; or his eventual arrest, upon a “conformed” warrant. The critical piece of evidence in this case — that is, the proof that establishes that Thompson violated his parole — is the officers’ direct observations of Thompson on the premises of Ra’nelles, in the City of Binghamton, after midnight. This “evidence” was obtained by the officers before they ever approached or communicated with Thompson, or in any way “searched,” “seized,” or arrested him. Even if they had never asked for his identification, or run a computer search to determine his parole status, they would still be able to identify him, in court, as an individual they observed in Ra’nelles bar on the night in question. This testimony, together with that of Thompson’s parole officer — who could presumably establish his identity, the fact that he was on parole, and the conditions of his parole — would be sufficient to establish his violations, without the need to introduce any ev *767 idence of events that transpired after the officers first observed him in Ra’nelles.[3]
It is well established that a witness’ in-court identification of an individual will not be suppressed as the result of illegal police conduct (e.g., a tainted “lineup” or “showup” procedure, or prior illegal search or arrest), as long as it is demonstrated that the identification is based upon the witness’ “independent recollection” (People v Pleasant, 54 NY2d 972, 973 [1981]). Since the officers each testified that they observed Thompson in the bar prior to any alleged illegality, that observation would provide an independent basis for their subsequent identification of him, in court, as an individual who was present in the bar when they entered it on December 11, 2004. Petitioner does not suggest that any other identification evidence exists (such as an identification from a lineup or other confirmatory procedure), which might be suppressed. And, insofar as respondents may seek to introduce, as evidence, the fact that Thompson was on parole, his status as a parolee is a matter of public record, which respondent cannot be precluded from introducing merely because it may have first come upon that information as a result of an improper search or seizure (see, People v Smith, 170 Misc 2d 486, 492 [1996]).
Moreover, even if Thompson’s arrest was illegal, due to the invalidity of the “conformed warrant” upon which it was effected, or for any other reason, petitioner has identified no evidence that was obtained as a result of that arrest, and that might therefore be suppressible on that ground (compare, People v Rossi, 80 NY2d 952, 954 [1992]).
In light of respondent’s representations in its memorandum, that neither Thompson’s actual “ID card,” nor the statements he allegedly made to Officer Braceo, are relevant to the issue of his guilt or innocence of the charged violation (mem of law, dated Feb. 24, 2005, at 9-10), the court finds that there is no evidence that might be suppressed, if it were to determine that the conduct complained of by petitioner was indeed illegal. Accordingly, the petition must be, and hereby is, dismissed.

. Testimony established that parolees in the Binghamton area are required to remain at their residences during the night; although the curfew time varies, it usually commences between 7:00 and 10:00 P.M., and extends until 6:00 or 7:00 A.M. the next day. Also, many parolees are prohibited from visiting bars or establishments where alcohol is served.

. Though mindful of the decision of the Monroe County Supreme Court in People ex rel. Gordon v O’Flynn (3 Misc 3d 963 [2004]), to the effect that Piccarillo is no longer good law, this court does not reach the same conclusion. In light of the Court of Appeals’ express reference to the rights established by “both Federal and State Constitutions,” and the “well-established policy in this State,” as the basis for its holding (Piccarillo at 83 [emphasis added]), it appears unlikely that the holding of Pennsylvania Bd. of Probation & Parole v Scott (524 US 357 [1998]), to the effect that the federal exclusionary rule is inapplicable to parole revocation hearings, would be viewed as abrogating the holding of Piccarillo. In any event, it is this court’s view that until the Court of Appeals declares otherwise, the express holding of Piccarillo remains the law of this state.

. Indeed, it appears from the representations made in respondents’ brief that no evidence of those subsequent events was actually introduced at the initial hearing.